UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MELISSA CRABLE,

     Plaintiff,

v.                                                                    Case No.  5:10-cv-402-Oc-37TBS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

     Defendant.

_____

<u>ORDER</u>

Before the court are the following motions:

1.     Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion to Seal Plaintiff Ainaseth Montanez's Notice of Service of Verified Second Amended Answers to Defendant's Second Supplemental Interrogatories, filed on August 15, 2011.  (Doc. 64).

2.     Defendant's Motion to Compel Responses to Amended Supplemental Interrogatories to Plaintiff and Incorporated Memorandum of Law, filed on August 15, 2011.  (Doc. 65).

3.     Motion for Protective Order and to Quash or Modify Subpoena Directed to Non-Party Millennium Medical Management, LLC and Memorandum of Law in Support of Same, filed on August 29, 2011.  (Doc. 69).

4.     Non-party Millennium Medical Management, LLC and Dr. Ara Deukmedjian's Motion for Leave to Supplement Motion for Protective Order and to Quash, filed on September 16, 2011.  (Doc. 76).

1

5.      Defendant's Motion to Compel and For Sanctions Regarding Deposition of Millennium Medical Management Corporate Representative and Incorporated Memorandum of Law, filed on October 7, 2011.  (Doc. 81).

6.      The Records Custodian of Morgan and Morgan, P.A. Motion for Protective Order to Defendant's Non-Party Subpoena Duces Tecum, filed on October 13, 2011. (Doc. 83).

## I.  Background

This is an action for uninsured/under-insured motorist benefits brought by plaintiff against State Farm for injuries she allegedly incurred in a November 12, 2008 automobile accident.  Following the accident, plaintiff underwent medical treatments and she engaged the firm of Morgan & Morgan as her attorneys.  The firm referred her to Dr. Ara Deukmedjian at Millennium Medical Management, a/k/a The Deuk Spine Institute ("Deuk Spine") which entered into an agreement with her to take a lien on the proceeds of this lawsuit rather than bill her insurance carrier.  Dr. Deukmedjian examined the plaintiff and performed surgical procedures on her cervical spine.  Now, she claims $76,000 in economic damages nearly $65,000 of which results from the treatment provided by Dr. Deukmedjian.[1]  The plaintiff intends to rely upon her treating physicians, including Dr. Deukmedjian, for any expert testimony in her case against State Farm.

After the plaintiff was treated by Deuk Spine, the Morgan & Morgan firm withdrew as her counsel.  Then State Farm served a non-party subpoena duces tecum on the records custodian of Morgan & Morgan seeking extensive discovery concerning the

---

[1] Plaintiff has already received more than $10,000 in PIP and medical payments from State Farm towards the $76,000 and therefore Dr. Deukmedjian's medical bills constitute almost all of her remaining damages.

relationship between the law firm and Deuk Spine.  Morgan & Morgan has objected to

the subpoena.  State Farm has also attempted to subpoena records from Deuk Spine

which has objected and State Farm took a Rule 30(b)(6) deposition of Deuk Spine which

it complains, did not comply with its obligations under the Rule.  On November 2, 2011,

the Court heard oral argument on the motions.

The core issue before this Court is the scope of discovery State Farm may obtain

from the plaintiff, Deuk Spine and Morgan & Morgan concerning the relationship

between Morgan & Morgan and Deuk Spine.  These parties are simultaneously litigating

the same issue in three or more pending state court actions including Ainaseth

Montanez and Red Starke v. Rosina M. Abbate, Case No.: 48-2010-CA-73-O in the

Circuit Court in and for Orange County, Florida.  In Montanez, the plaintiffs have

disclosed, pursuant to court order, that within the last four years, Morgan & Morgan has

referred approximately 176 clients to Deuk Spine for independent medical examinations

and that during the past three years, Morgan & Morgan has paid Deuk Spine

approximately $2,955,786.74.  Based upon the arguments of counsel, the Court

understands these figures are only for cases in which a lawsuit was filed.

State Farm has commenced the deposition of Ms. Margaret Zukoski in the

Montanez case.  Morgan & Morgan has yet to cross-examine Ms. Zukoski and the

completion of her deposition is pending rulings by the state court on Morgan & Morgan's

objections including to the discovery of documents Ms. Zukoski brought to the

deposition.  According to Morgan & Morgan, the deponent is a disgruntled ex-employee,

her deposition is incomplete, most of what she has to say is speculation and hearsay

and therefore, this Court should not consider the testimony she has given so far.  To date, Ms. Zukoski has testified, inter alia, that:

1.  For four years she worked for Morgan & Morgan as a litigation paralegal. (Page 5. Lines 10-16)

2.  Her responsibilities included dealing with treating physicians.  (Page 5, Line 24-Page 6, Line 16)

3.  In September or October of 20009, Dr. Deukmedjian went to Morgan & Morgan spoke to the case managers about his laser surgery and told them they should be sending their clients to him.  (Page 24, Lines 18-25)

4.  Attorney, Dan Newlin, operating from Morgan & Morgan, would send patients to Deuk Spine if there was any bulge depicted on an MRI.  Dr. Deukmedjian would perform surgery and submit a bill.  (Page 19, Line 8- Page 20, Line 2 and Page 22, Line 25-Page 23, Line 12)

5.  Morgan & Morgan would then handle the case.  (Page 23, Lines 15-17)

6.  There was an arrangement between Deuk Spine and Morgan & Morgan that Deuk Spine would accept half the amount billed for the surgery. (Page 20, Lines 3-20 and Page 37, Lines 5-15)

7.  The full amount of the Deuk Spine bill, not the amount Deuk Spine had agreed to accept was used at mediation and trial.  (Page 37, Line 24-Page 38, Line 14)

8.  The purpose of the association between Dan Newlin and Deuk Spine was to have Deuk Spine perform surgery on the clients to generate money. (Page 23, Line 24-Page 24, Line 10)

9.      Deuk Spine would request and be provided liability insurance policy limits. Deuk Spine also wanted to know the date a demand was sent, how much was demanded, whether trial was set and how soon Deuk Spine could expect payment.  (Page 25, Lines 8-22)

10.     Deuk Spine would send to Morgan & Morgan a list of the patients about whom it wanted this information.  (Page 26, Lines 2-7)

11.     Morgan & Morgan no longer uses Deuk Spine because Dr. Deukmedjian "got greedy" and began wanting his entire bill paid instead of the half previously agreed to.  (Page 48, Lines 14-19)

12.     Ms. Zukoski testified to being in possession of a 25 page "Vendor Check History" listing payments made by Morgan & Morgan to Deuk Spine between July, 2007 and 2010.  (Page 51, Lines 7-24)

During argument State Farm stated its belief that there is a $10 million relationship between Morgan & Morgan and Deuk Spine and that Deuk Spine "became an active, knowing, interested party with respect to this litigation[.]"  (Tr. at 11).  State Farm also expressed its belief "that when we get this information from Morgan & Morgan with the invoices from Deuk Spine -- and certainly, your Honor, the patient information should be redacted – but it should be somehow numbered so that it matches up with the patient -- the vendor check history - that will show that in those invoices there is a large predominance of these patients that have this procedure [the percutaneous discectomy procedure performed by Dr. Deukmedjian on plaintiff].  So we're going to look at Dr. Deukmedjian's testimony that says 5 percent of all patients, and then we look at the patients that are also clients of Morgan & Morgan and I am betting that it is 80 to 90

percent of those patients that have one of these procedures performed by Dr. Deukmedjian.  This is certainly relevant information for a number of reasons."  (Tr. at 18.)

At the hearing, State Farm agreed to limit its subpoena to Morgan & Morgan to two specific types of documents: (1) the Vendor Check History listing payments made by Morgan & Morgan to Deuk Spine as described by Ms. Zukoski, and (2) invoices from Deuk Spine to Morgan & Morgan for the treatment of patients.  (Tr. at 33.)

## II.  Florida Law

When a party engages in discovery to obtain facts with which to assault the credibility of an opponent's expert witness it may seek that information from multiple sources including: (1) the expert; (2) the party for whom the expert will testify; (3) the party's insurance company; or (4) the attorney for the party.  In <u>Syken v. Elkins</u>, 644 So.2d 539 (Fla. 3rd DCA 1994), Florida's Third District Court of Appeal established guidelines for the taking of discovery from an expert medical witness concerning the probability he was biased in favor of the party upon whose behalf he was retained.  On appeal, the Florida Supreme Court approved and adopted the Third District's holding. <u>Elkins v. Syken</u>, 672 So.2d 517 (Fla. 1996).  The court said the decision "strikes a reasonable balance between a party's need for information concerning an expert witness's potential bias and the witness's right to be free from burdensome and intrusive production requests."  <u>Id</u>. at 522.  The holding in <u>Elkins</u> was limited to medical experts. The court subsequently enacted Rule 1.280(b)(4)(A)(iii) which extended its decision to all experts.  Both the decision and the Rule attempt to balance a party's need for information against the burden, annoyance and embarrassment production may cause

the expert witness.  They also speak to the courts' concerns that in the absence of reasonable limits, qualified experts may be unwilling to participate in the judicial process and discovery may become unnecessarily and unduly expensive.

Following Elkins, the Florida Supreme Court addressed the limits of expert witness discovery propounded to a party.  In Allstate Insurance Co. v. Boecher, 733 So.2d 993 (Fla. 1999), the issue was whether Elkins and Rule 1.280 precluded a party from obtaining from its opponent, discovery concerning the extent of the opponent's relationship with an expert witness.  The court held that the concerns it discussed in Elkins are not present when a party is asked about the extent of its relationship with an expert and the amount of money the party has paid the expert over time.  Id. at 997. The court concluded that the guidelines it adopted in Elkins and incorporated into Rule 1.280(b)(4) did not apply.  Id. at 999.  In reaching its decision, the court observed:

> The information sought here would reveal how often the expert testified on Allstate's behalf and how much money the expert made from its relationship with Allstate.  The information sought in this case does not just lead to the discovery of admissible information.  The information requested is directly relevant to a party's efforts to demonstrate to the jury the witness's bias.
>
> The more extensive the financial relationship between a party and a witness, the more it is likely that the witness has a vested interest in that financially beneficial relationship continuing. A jury is entitled to know the extent of the financial connection between the party and the witness, and the cumulative amount a party has paid an expert during their relationship.  Id.

Next, Florida courts dealt with the scope of discovery from an insurance company that is providing a defense for its insured.  In Springer v. West, 769 So.2d 1068 (Fla. 5th DCA 2000), the plaintiff asked the defendant in interrogatories about the relationship between the defendant's insurance carrier and the defense' trial expert.  In a 2-1

decision, Florida's Fifth District Court of Appeal found the holding in <u>Boecher</u> applied

even though the insurance company was not a party to the lawsuit.  <u>Id</u>. at 1069.  The

majority said:

> Where an insurer provides a defense for its insured and is
> acting as the insured's agent, the insurer's relationship to an expert
> is discoverable from the insured.  To hold otherwise would render
> <u>Boecher</u> meaningless in all but a small class of cases.  Similarly, a
> defendant may question a plaintiff about any relationship between
> his or her attorney and the plaintiff's trial expert.  In both cases, the
> information sought is relevant to the witness's bias and will enhance
> the truth-seeking function and fairness of the trial, as intended by
> <u>Boecher</u>. [citation omitted.] <u>Id</u>.

In a concurring opinion, Judge Harris opined:

> Since the defendant relies on his or her insurer and insurer-
> appointed lawyer to employ necessary witnesses, it is the
> relationship between those parties and the experts which is critical
> to the question of bias on the part of the witness.  The same is true
> for the plaintiff.  And it is counsel, and not the parties, who prepare
> the answers to such interrogatories and the information sought is
> not that difficult for them to obtain.  <u>Id</u>. at 1070.

Judge Griffin dissented because in her view, a plaintiff seeking this information

should attempt to subpoena it directly from the insurance company.  She also felt the

information would be inadmissible at trial because the relationship between the expert

and the insurance company could not be disclosed without revealing that the defendant

had insurance.

The following year a court more directly addressed the scope of discovery from

counsel.  In <u>Morgan, Colling & Gilbert, P.A. v. Pope</u>, 798 So.2d 1 (Fla. 2nd DCA 2001),

the defense sought to discover from the plaintiff's law firm the extent of its financial

relationship with two experts the firm retained on behalf of the plaintiff.  The Second

District denied the petition for writ of certiorari and then said in dicta that:

Even if we were to consider that irreparable harm had been shown and decided to consider the petition on its merits [citation omitted], we would hold that the order under review does not depart from the essential requirements of the law.  Recently, the Fifth District, in dicta, has suggested that "a defendant may question a plaintiff about any relationship between his or her attorney and the plaintiff's expert."  Springer v. West, 769 So.2d 1068, 1069 (Fla. 5th DCA 2000).  This conclusion is a natural and logical extension of the requirement that defendant insurance companies disclose their financial relationships with their chosen expert witnesses.  Thus, rather than departing from the essential requirements of the law, the circuit court's order conforms to the trend insuring fairness in the jury trial process by permitting discovery of a financial relationship between a witness and a party representative.  Id. at 3.

Most recently, in Katzman v. Rediron Fabrication, Inc., 2011 WL 3477093 (Fla. App. 4 Dist.), the court was confronted with the scope of permissible discovery from what it termed a "hybrid" witness.  In this case, the plaintiff's lawyer referred his client to Dr. Katzman in anticipation of litigation.  Dr. Katzman both treated the plaintiff thus making him a fact witness and the doctor was expected to testify at trial concerning the permanency of the plaintiff's injuries and need for future medical care thus making him an expert witness.  Dr. Katzman provided these services pursuant to a letter of protection agreement whereby he would be paid out of the proceeds of the lawsuit.  Consequently, he had a financial stake in the outcome of the litigation.  Dr. Katzman performed what the appellate court described as "an allegedly controversial outpatient surgical procedure" and the defense "believes that a large portion of Katzman's income is generated by recommending this procedure for patients referred to him in litigation cases and that he charges more for the procedure in litigation cases than in nonlitigation cases."  Id. at 1.  The Fourth District Court of Appeal said:

Generally, financial bias discovery from such a hybrid expert should not exceed that permitted under Elkins and rule 1.280(b)(4)(A).  Discovery that exceeds these limits should be

9

presumed burdensome and harassing for the cogent reasons
discussed in Elkins.  For similar reasons, the privacy interests of
hybrid experts are weighty and should be protected within
reasonable limits. [footnote omitted] Id. at 3.

However, the court went on to say:

In this case, the discovery that is sought is not relevant
merely to show that the witness is biased based on an ongoing
financial relationship with a party or lawyer.  We agree that Elkins
discovery should generally provide the sufficient discovery into such
financial bias.  The discovery here is relevant to a discreet issue,
whether the expert has recommended an allegedly unnecessary
and costly procedure with greater frequency in litigation cases, and
whether the expert, as a treating physician, allegedly overcharged
for the medical services at issue in the lawsuit.  The limited
intrusion into the private financial affairs of the doctor in this case is
justified by the need to discover case-specific information relevant
to the substantive issues in the litigation, i.e., the reasonableness of
the cost and necessity of the procedure.

Elkins was not intended to shield discovery of such relevant
information.  Id. at 4.

And, the court added:

We expect that trial judges will exercise their discretion
carefully when circumstances require discovery in excess of Elkins
and not allow the exception to swallow the rule.  Trial courts should
not allow discovery from hybrid experts to become a tactical
litigation weapon to harass the witness, the party, or the law firm(s).
Id. at 4.

III.  The Motion to Seal  Ainaseth Montanez's Notice
of Service of Verified Second Amended Answers to Defendant's
Second Supplemental Interrogatories  (Doc. 64)

The state court ordered that Morgan & Morgan's responses to State Farm's

interrogatories in Montanez be maintained confidentially and State Farm requests that

this Court grant it leave to file these responses under seal to support its Motion to

Compel.  The motion is unopposed and is due to be GRANTED.  (Tr. at 2-3.)

IV. Morgan and Morgan's Motion for Protective Order (Doc. 83)

On September 21, 2011, State Farm served a non-party subpoena duces tecum without deposition on Morgan & Morgan's records custodian.  (Doc. 83 Ex. A.)  The subpoena asks for information concerning Morgan & Morgan, its current and former clients, and medical records, bills, and invoices pertaining to Deuk Spine.  On October 13, 2011, Morgan & Morgan filed the present Motion for Protective Order in which it argues that: (1) State Farm's counsel has already attempted to obtain the same information from Morgan & Morgan in a prior state court action and the state court sustained most of Morgan & Morgan's objections, (2) the information State Farm is attempting to obtain from Morgan & Morgan is not maintained in the normal course of its business and it would be unduly burdensome and expensive for Morgan & Morgan to compile, (3) compliance with State Farm's subpoena would require Morgan & Morgan to violate the attorney-client and work product privileges, and (4) compliance would require Morgan & Morgan to violate HIPAA law because State Farm is requesting the disclosure of the personal health information of third party individuals to a non-authorized third party.  At the hearing, Morgan & Morgan  emphasized that it has withdrawn and no longer represents the plaintiff.  (Tr. at 7.)  It also argued that many of State Farm's discovery requests violate Florida Statutes 456.057(7)(a) because State Farm asks for the names of Morgan & Morgan's clients.  (Id. at 7-8).  For these reasons, Morgan & Morgan is asking the Court to strike the subpoena and, pursuant to Federal Rule of Civil Procedure 37(a)(5), award it costs and expenses.

State Farm contends that Morgan & Morgan's motion to quash the subpoena should be denied because (1) the objections are untimely, (2) the discovery is relevant

to Dr. Deukmedjian's alleged bias, (3) the discovery is relevant to the reasonableness of the amount charged by Deuk Spine to treat the plaintiff, (4) there would be no undue burden on Morgan & Morgan to track the money it paid Deuk Spine, and (5) to the extent privacy interests are implicated, protective measures can be implemented to protect the rights of third parties.

Federal Rule of Civil Procedure 26(c) provides that a Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1).  The party seeking a protective order has the burden to demonstrate good cause, and must make "a particular and specific demonstration of fact as distinguished from stereotypes and conclusory statements" supporting the need for a protective order.  See, e.g., United States v. Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978).  Rule 26 also governs the scope of discovery, and provides in part that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  Discovery requests that are otherwise reasonable may be limited for the following reasons:

  (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

  (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

  (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

The information already disclosed reveals an extensive financial relationship between Morgan & Morgan and Deuk Spine and there is unfinished deposition testimony supporting State Farm's contention that plaintiff's economic damages may be inflated as part of a standard practice.  The Vendor Check History described by Ms. Zukoski and the invoices sought by State Farm are relevant: (1) to show the extent of the financial relationship between Morgan & Morgan and Deuk Spine, (2) to establish the reasonableness of the cost of plaintiff's surgery, and (3) because they may go to the heart of the truth seeking function and fairness of the trial of this lawsuit.

Although Morgan & Morgan represented at the hearing that production of the requested information would be extremely burdensome it failed to file any affidavits or offer any live testimony in support of its claim.  If Ms. Zukoski's testimony is true, production of the Vendor Check History and invoices should not be unduly burdensome in violation of Rule 26(c).  She has testified that this information is readily available and to the extent privacy and privilege concerns are implicated the documents can be redacted.

Morgan & Morgan's Motion for Protective Order is therefore due to be DENIED.  The law firm is ordered to produce (1) the Vendor Check History or provide an affidavit from a competent witness that the document does not exist.  If it did exist sometime in the past then the affidavit shall address what happened to the information, and (2) the invoices from Deuk Spine to Morgan & Morgan for treatment of the 176 clients already identified by Morgan & Morgan in the answers to interrogatories in the Montanez case.  Once this information has been produced State Farm may seek additional discovery

13

from Morgan & Morgan and if objections are made the Court will consider those issues

on the merits.

V.  Deuk Spine's  Motion for Leave to Supplement
Motion for Protective Order and to Quash  (Doc. 76)

Non-parties Deuk Spine and Dr. Deukmedjian were served with a subpoena for

deposition on August 23, 2011 and filed their motion for a protective order and to quash

on August 29, 2011 (Doc. 69.)  The motion references the subpoena and an affidavit

neither of which was filed with the motion.  Deuk Spine and Dr. Deukmedjian say this

was due to an "oversight" and that the subpoena and affidavit are "critical pieces of

information that are necessary for a full and fair consideration by the Court."  The

affidavit was executed by Dr. Deukmedjian on August 31, 2011 so this is not a situation

where it was created for the purpose of addressing arguments made in State Farm's

September 12, 2011 response.  (Doc. 76 at 2.)  Deuk Spine and Dr. Deukmedjian have

asked the Court to allow them to file the subpoena and affidavit as supplements to their

motion for protective order and to quash.

The Court has reviewed Dr. Deukmedjian's affidavit, which states that it would be

an extreme burden and expense for Deuk Spine to comply with State Farm's subpoena.

(Doc. 76-1.)  The affidavit contains important pieces of information necessary for a full

and fair consideration by the Court of Deuk Spine and Dr. Deukmedjian's motion.

Therefore, the Motion for Leave to Supplement Motion for Protective Order and to

Quash (Doc. 76) is due to be GRANTED.

VI. State Farm's Motion to Compel and For Sanctions Regarding the Deposition
of Millennium Medical Management's Corporate Representative  (Doc. 81.)

In response to State Farm's subpoena duces tecum, Deuk Spine designated Dr.

Ara Deukmedjian as its corporate representative.  The deposition was conducted and

now, State Farm argues that Dr. Deukmedjian was unprepared, refused to respond to

numerous questions and consequently, Deuk Spine effectively failed to appear.  State

Farm requests the Court issue an Order: (1) holding Deuk Spine in contempt, (2)

compelling it to appear for deposition at its own expense, (3) compelling it to produce a

properly prepared 30(b)(6) witness for deposition who can fully and truthfully respond,

(4) compelling Deuk Spine to produce all documents responsive to the subpoena duces

tecum, and (5) awarding State Farm fees and costs incurred in the first deposition and

for the preparation of this motion.  At the hearing, State Farm also requested that the

Court allow access to Deuk Spine's computer system by a Special Magistrate to extract

the information requested in State Farm's subpoena.[2]  (Tr.at 53.)

Deuk Spine contends that Dr. Deukmedjian was the appropriate 30(b)(6) witness

for deposition.  At the hearing, counsel for Deuk Spine stated that Dr. Deukmedjian "in

no way violated his obligation to be a viable 30(b)(6) witness in this case.  He gave a lot

of information to Mr. Gobel that State Farm frankly wasn't even entitled to anyway.

However, in an abundance of caution, he did go out on a limb give them a lot of

information."  (Tr. at 45.)  Deuk Spine's counsel also represented that Dr. Deukmedjian

---

[2] The subpoena was made subject of a Motion for Protective Order and to Quash or
Modify Subpoena by Deuk Spine filed on August 29, 2011 (Doc. 69), to which State
Farm responded on September 12, 2011.  (Doc. 75.)  The Court reserved ruling on the
pending motion until after the deposition in hopes that the deposition would limit or
eliminate the need for this discovery litigation.  (Doc. 80.)

was prepared for the deposition and that she knows this information because she "had a

conversation with [Dr. Deukmedjian] before this deposition went forward." (Id. at 48.)

Federal Rule of Civil Procedure 30(b)(6) provides:

> (6) Notice or Subpoena Directed to an Organization. In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

An organization such as Deuk Spine has clear and important duties when

designating and preparing a witness under Rule 30(b)(6). First, the deponent has a duty

to be knowledgeable about the subject matter identified as the area of inquiry. See

Alexander, 186 F.R.D. at 151 (citing United States v. Taylor, 166 F.R.D. 356, 361

(M.D.N.C. 1996)); SEC v. Morelli, 143 F.R.D. 42, 44-45 (S.D.N.Y. 1992); In re Air Crash

Disaster at Detroit Metro. Airport, 130 F.R.D. 627, 630-32 (E.D. Mich. 1989). Second,

the designating party has a duty to designate more than one witness if necessary in

order to respond to the relevant area of inquiry. Id. (citing Fed. R Civ. P. 30(b)(6);

Buycks-Roberson v. Citibank Fed. Sav. Bank, 162 F.R.D. 338, 343 (N.D. Ill. 1995)).

Third, the designating party has a duty to prepare the witness to testify on matters not

only known by the witness, but those that should be reasonably known by the

designating party. Id. (citing Fed. R. Civ. P. 30(b)(6); Protective Nat'l Ins. v.

Commonwealth Ins., 137 F.R.D. 267, 277-78 (D. Neb. 1989)). The purpose of a

30(b)(6) deposition "is to get answers on the subject matter described with reasonable

particularity by the noticing party, not to simply get answers limited to what the deponent happens to know." Id.  Fourth, the designating party has a duty to substitute an appropriate deponent when it becomes apparent the previous deponent is unable to respond to certain relevant areas of inquiry.  Id. (citing Taylor, 166 F.R.D. at 360; Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, 126 (M.D.N.C. 1989)).  "All of these duties correspond to the ultimate underlying purposes of Rule 30(b)(6) - namely, preventing serial depositions of various witnesses without knowledge within an organization and eliminating "bandying," which is the name given to the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby the organization itself." Id. (citing Fed. R. Civ. P. 30(b)(6) Adv. Notes, 1970 Amendment).

Deuk Spine did not designate a proper 30(b)(6) deponent. Dr. Deukmedjian did not produce any documents at the deposition responsive to items two through seven of the subpoena duces tecum.  He testified that he had done nothing to prepare for his deposition as Deuk Spine's corporate representative because he had not been paid to do so.  When refusing to respond to an inquiry regarding the charges from the pathologist to Deuk Spine for services rendered to plaintiff, a topic that was specifically identified as an area of inquiry in the 30(b)(6) subpoena, Dr. Deukmedjian refused to answer the question and stated "he did not look it up, no.  In preparation for today I did not, no, since I wasn't paid to prepare for today.  I was told by the judge I didn't have to prepare for today." (Dep. at 72-73.)  In explaining his lack of preparedness, Dr. Deukmedjian seems to be referring to the Court's June 7, 2011 Order on the Defendant's Motion to Determine Expert Compensation.  (Doc. 58.)  In that Order, this

Court determined that Dr. Deukmedjian was a board certified neurosurgeon entitled to a reasonable fee of $500 per hour for his deposition as plaintiff's treating physician and that State Farm must pay Dr. Deukmedjian that same hourly rate for any preparation time incurred at its request for that deposition.  (Id. at 6-7.)  The 30(b)(6) deposition of Deuk Spine however, was not made subject to this Court's June 7, 2011 Order.  Dr. Deukmedjian's decision to produce himself as the 30(b)(6) witness on behalf of Deuk Spine as to billing and technology issues does not give rise to an obligation to pay him an expert witness fee as a neurosurgeon.  Deuk Spine could have designated any representative of the company with sufficient knowledge of the billing and technology issues identified in the 30(b)(6) notice to testify.  The topics listed in State Farm's 30(b)(6) notice did not require the expertise of a board certified neurosurgeon.

Dr. Deukmedjian was unable to answer questions regarding many items within the areas of inquiry identified in the subpoena duces tecum, including the submission of invoices to Morgan & Morgan (Dep. at 9), how to determine what invoices had been submitted to Morgan & Morgan (Id. at 12-13), how invoices were generated to Morgan & Morgan, if they are trackable on Deuk Spine's software (Id. at 17-19), whether Deuk Spine receives or has received a 1099 from Morgan & Morgan for services rendered (Id. at 25-26), or the amount received by Deuk Spine in reimbursement from Medicare and private insurers for the same procedures performed on plaintiff.  (Id. at 37-38.)  Dr. Deukmedjian refused to answer many questions on the ground of privilege, including what fields are searchable in Deuk Spine's medical billing software (Id. at 26-27), what other healthcare providers reimburse for the procedures performed on plaintiff (Id. at 59), and whether Deuk Spine negotiates lower rates for patient medical bills as a

18

standard part of its practice.  (Id. at 72).  When asked about any records responsive to items two through seven of the subpoena duces tecum, he testified that it was his understanding, based on his personal use of the computer system, that records relating to patients who are also clients of Morgan & Morgan cannot be found without going through every page of every patient's medical records one-by-one.  (Id. at 25-27, 73-77.)

The Court finds that Deuk Spine failed to comply with its duties in designating and preparing a witness under Rule 30(b)(6).  Dr. Deukmedjian was not knowledgeable on the subject matter specified as the areas of inquiry (see, e.g., Taylor, 166 F.R.D. at 361), was not reasonably prepared to testify on matters that should be reasonably known to the deponent (see, e.g., Protective Nat'l Ins., 137 F.R.D. at 277-78), and Deuk Spine did not substitute an appropriate deponent when it became apparent that Dr. Deukmedjian was unable to respond to relevant areas of inquiry (see, e.g., Taylor, 166 F.R.D. at 360) or designate more than one deponent in order to respond to the relevant areas of inquiry (see, e.g., Buycks-Roberson, 162 F.R.D. at 343).

Now, Deuk Spine must produce one or more properly prepared and knowledgeable 30(b)(6) deponents.  "When a corporation or association designates a person to testify on its behalf, the corporation appears vicariously through that agent.  If that agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all."  Resolution Trust Corp. v. So. Union Co., Inc., 985 F.2d 196, 197 (5th Cir. 1993); see also Black Horse Lane Assoc., L.P. v. Dow Chemical Corp., 228 F.3d 275, 304 (3d Cir. 2000) (stating that if a Rule 30(b)(6) witness is unable to give useful and relevant information he is not

"present" for the deposition); <u>Continental Cas. Co. v. First Fin. Empl. Leasing, Inc.</u>, 716 F. Supp. 2d 1176, 1189 (M.D. Fla. 2010) ("If the designated deponent cannot answer questions regarding the subject matter as to which he is designated, then the corporation has failed to comply with its Rule 30(b)(6) obligations and may be subject to sanctions.")

State Farm's Motion to Compel and for Sanctions Regarding Deposition of Millennium Medical Management Corporate Representative (Doc. 81) is therefore due to be GRANTED.   The Court orders that: (1) Deuk Spine produce one or more properly designated and prepared 30(b)(6) deponents within thirty (30) days  from the date of this Order, and (2) by the date of the 30(b)(6) deposition, produce the correspondence between Morgan & Morgan and Deuk Spine described by Ms. Zukoski in her deposition. This documentation includes Deuk Spine's requests for liability insurance policy limits, the dates demands were sent, how much was demanded, whether trial was set and how soon Deuk Spine could expect payment for Morgan & Morgan clients treated by Deuk Spine.  Deuk Spine shall also produce all responses to these requests which it received. Alternatively, Deuk Spine shall provide an affidavit from a competent witness that the documents do not exist.  If they did exist sometime in the past then the affidavit shall address what happened to the documents.  Deuk Spine shall also produce the items responsive to item 6 of State Farm's subpoena duces tecum, the "Reimbursement Schedules for Medicare and those Insurers identified in Exhibit "A" for the Services provided to Melissa Crable."

The Court declines to award State Farm attorney's fees or costs at this time.

VII. Motion for Protective Order and to Quash or Modify Subpoena
Directed to Non-Party Millennium Medical Management, LLC (Doc. 69).

On August 23, 2011, State Farm served an Amended Notice of Taking Deposition

Duces Tecum on Deuk Spine in which it requested information concerning Deuk Spine's

medical charges, reimbursements from Medicare, billing practices, and collection

practices. Deuk Spine has objected and seeks protection from the subpoena.

The Court has ordered Deuk Spine to produce a viable 30(b)(6)

deponent(s) and finds it is appropriate to reserve ruling on Deuk Spine and Dr.

Deukmedjian's Motion for Protective Order until after Deuk Spine's 30(b)(6)

deposition occurs since that deposition may eliminate some or all of the issues

raised in this motion. The determination of this motion may also be affected by

the potential disclosure of the documents Ms. Zukoski produced at her

deposition. Therefore, the Court CARRIES Deuk Spine and Dr. Deukmedjian's

Motion for Protective Order and to Quash or Modify Subpoena (Doc. 69). The

Court will revisit this motion after the 30(b)(6) deposition of Deuk Spine and after

a final decision concerning the documents discussed in Ms. Zukoski's deposition.

VIII. State Farm's Motion to Compel Responses
to Amended Supplemental Interrogatories to Plaintiff (Doc. 65).

In this Motion, State Farm seeks responses to interrogatories it served on

plaintiff requesting information regarding Morgan & Morgan's relationship with Dr.

Deukmedjian. In light of the Court's rulings to this point it is appropriate to DENY

WITHOUT PREJUDICE State Farm's Motion to Compel Responses (Doc. 65).

Upon the request of a party, the Court may revisit this motion following the

conclusion of Deuk Spine's 30(b)(6) deposition and a review of the documents produced to State Farm by Morgan & Morgan and Deuk Spine.

IT IS SO ORDERED.

DONE AND ORDERED at Ocala, Florida on November __, 2011.

_____
THOMAS B. SMITH
United States Magistrate Judge

Copies to all Counsel