**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**MELISSA CRABLE,**

**Plaintiff,**

**-vs-** **Case No: 5:10-cv-402-Oc-37TBS**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**

**Defendant.**
______________________________________/

## ORDER

This cause comes before the Court on Non-Party Millennium Medical Management, LLC's ("Deuk Spine") and Dr. Ara Deukmedjian's ("Dr. Deukmedjian") Rule 72(a) Objection to Magistrate Smith's Discovery Orders (Doc. Nos. 136 and 146), filed on February 16, 2012. (Doc. No. 150.) Defendant State Farm Mutual Automobile Insurance Company ("State Farm") having filed its Response on March 15, 2012 (Doc. No. 160), the Objection is ripe for the Court's disposition.

## BACKGROUND

At its center, this case concerns the nature and extent of injuries sustained by Melissa Crable ("Ms. Crable") in an automobile accident that occurred on November 12, 2008, on SR 27 in Lake County, Florida. The claim arises in the context of a dispute over uninsured motorist benefits. The complaint was initially filed in state court on January 20, 2010, and the matter was removed by State Farm to this Court on August 17, 2010.

The fulcrum point for the litigation to date has centered on the relationship

between Ms. Crable's initial counsel, Morgan & Morgan law firm, and her treating physician Dr. Deukmedjian. State Farm has quite aggressively sought documents, patient information, and billing records, seeking, presumably, to identify bias, motive, interest, and prejudice with which to impeach the credibility of the testimony of the treating physician, as well as the necessity and reasonableness of his bills for treatment rendered to Ms. Crable as a consequence of her accident.

On various discovery motions, on November 14, 2011, Magistrate Smith entered an order requiring, *inter alia*, Deuk Spine to: produce all e-mail correspondence between Morgan & Morgan and Deuk Spine; properly designate a 30(b)(6) representative to respond to State Farm's deposition; and, produce certain categories of documents. (*See* Doc. No. 101, p. 20.) Deuk Spine timely lodged its objections to the Magistrate Judge's order (Doc. No. 108); however, this Court found them to be without merit and they were overruled (Doc. No. 118).

In compliance with the November 14, 2011 Order, Dr. Deukmedjian appeared for a deposition on January 13, 2011. (*See* Doc. No. 124-1.) Dissatisfied with the circumstances and the manner in which the deposition occurred, however, State Farm filed its Motion for Contempt and for Sanctions Against Dr. Deukmedjian and Deuk Spine on January 27, 2012. (*See* Doc. No. 125.) Expressing his own dissatisfaction, Magistrate Smith, *sua sponte*, decided that with the impending March trial date the discovery would not move quickly enough unless the Court became more involved in the process, and ordered that the depositions of Dr. Deukmedjian and Deuk Spine be conducted in the presence of the Court in the United States Courthouse in Ocala, Florida, during the month of February. (Doc. No. 136.)

Shortly thereafter, State Farm moved to continue the trial term, and in light of the

ongoing discovery disputes, the Court removed the case from the March trial docket. (Doc. No. 144.) Consequently, Magistrate Smith granted State Farm's Motion for Additional Time to Complete Deposition of Dr. Deukmedjian and Deuk Spine (Doc. No. 140), and ordered that these depositions be conducted no later than March 30, 2012, again in the presence of the Court in the U.S. Courthouse in Ocala, and that deponents shall bring with them "all of the documents they were previously ordered to produce . . . [both] redacted and un-redacted so that if it becomes necessary, the Court can make an in camera inspection of the un-redacted documents during the depositions." (Doc. No. 146, p. 2.)

Out of these two discovery orders (Doc. Nos. 136 and 146) stems Deuk Spine's and Dr. Deukmedjian's objection here at issue. To this objection the Court now turns.

**APPLICABLE STANDARD**

A party may seek review of a magistrate judge's ruling on a non-dispositive matter by serving and filing objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(a). A non-dispositive matter is one that does not dispose of a claim or defense of any party. *Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1365 (11th Cir. 2007). If a proper objection is made, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see Howard v. Hartford Life & Acc. Ins. Co.*, 769 F. Supp. 2d 1366, 1372 (M.D. Fla. 2011) (noting that under Fed. R. Civ. P. 72(a), "in order to prevail, [the party who makes the objection] must establish that the order is clearly erroneous or contrary to law."); *Ray v. Cutter Labs., Div. of Miles, Inc.*, 746 F. Supp. 86, 87 (M.D. Fla. 1990) ("[I]t is proper to apply the clearly erroneous standard when reviewing a magistrate's order."). A finding is clearly

erroneous "when although there is evidence [in the record] to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). A finding is considered contrary to law if it does not apply or misapplies the relevant statutes, case law, or rules of procedure. *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 74 (N.D.N.Y. 2000).

## DISCUSSION

Deuk Spine and Dr. Deukmedjian object to Magistrate Smith's orders mandating the deposition of Dr. Deukmedjian and Deuk Spine to be conducted in Ocala before the Court; requiring the production of over 4,000 pages of e-mail correspondence; and, requiring the production of copies of reimbursement schedules for those services provided to Ms. Crable. (Doc. No. 150, p. 10.) Upon its review of the record in its entirety, the Court determines that Magistrate Smith's orders are not clearly erroneous nor contrary to law, and the objection lodged is due to be **OVERRULED**.

The Court finds that the Florida Supreme Court's opinion in *Syken v. Elkins*, 672 So. 2d 517 (Fla. 1996) is inapposite under the instant set of facts, and declines Deuk Spine's invitation to rely upon it. The Court instead relies on *Katzman v. Rediron Fabrication, Inc.*, 76 So. 3d 1060 (Fla. 4th DCA 2011). In *Katzman*, the court distinguished *Elkins* and concluded that "*Elkins* . . . limit[s] general financial bias discovery sought for impeachment of a retained expert." *Id.* at 1064 ("[T]he circumstances in the present situation are different from that in *Elkins*, and the balance of interests is different.") (emphasis added). The court continued:

> The physician is not merely a witness retained to give expert opinion about an issue at trial. Likewise this is not a typical treating physician that a patient independently sought out. A lawyer referred the patient to the physician

> in anticipation of litigation and therefore the physician has injected himself into the litigation. This witness potentially has a stake in the outcome of the litigation not because of the [letter of protection ("LOP")]–because of the referral by the lawyer. The LOP merely gives the doctor the assurance that his/her bill will be paid directly from the proceeds of any settlement or verdict. It is the direct referral by the lawyer to the doctor that creates a circumstance that would allow the defendant to explore possible bias on the part of the doctor.
>
> . . . .
>
> In this case, the discovery that is sought is not relevant merely to show that the witness may be biased based on an ongoing financial relationship with a party or lawyer. We agree that Elkins discovery should generally provide sufficient discovery into such financial bias. The discovery here is relevant to a discrete issue, whether the expert has recommended an allegedly unnecessary and costly procedure with greater frequency in litigation cases, and whether the expert, as a treating physician, allegedly overcharged for the medical services at issue in the lawsuit. The limited intrusion into the financial affairs of the doctor in this case is justified by the need to discover case-specific information relevant to substantive issues in the litigation, i.e., the reasonableness of the cost and necessity of the procedure. In our view, it meets the requirement of 'unusual and compelling circumstances.'

*Id.* The Court adopts and applies the *Katzman* reasoning to the case at hand.

The Court recognizes the potential "chilling effect" extensive discovery of non-party treating physicians may have on their willingness to treat patients who are involved in litigation.[1] *See Elkins*, 672 So. 2d at 522. Therefore, the Court must emphasize that this ruling is limited to the present set of facts and the conduct of this particular witness and it is not meant to be a door opener for harassing and invasive discovery inquiries outside of these limited circumstances. Here, Ms. Crable was referred to Dr. Deukmedjian by her lawyer. He agreed to provide treatment in exchange for a letter of protection and is now seeking nearly $65,000 in reimbursement – about

[1] Without the ability to present testimony as to the nature and extent of accident related injuries, plaintiffs would be denied effective access to the courts. Similarly, well-meaning healthcare professionals would be understandably deterred from accepting as patients individuals who were seeking recompense for accident related injuries in the courts, thereby effectively impairing the ability of accident victims to receive proper health care. Neither of these outcomes is desirable.

eighty-five percent of Ms. Crable's total economic damages. (Doc. No. 92, p. 2.)

Furthermore, Dr. Deukmedjian has shown nothing but contempt for the discovery process and orders of the Court. Papers filed in support of the objection mischaracterize Dr. Deukmedjian's conduct. A simple reading of the deposition transcript (Doc. No. 124-1) suggests lack of cooperation, lack of candor, and lack of respect for the authority of the Court. For example, Dr. Deukmedjian did not produce the court-ordered documents until 3:00 p.m., an hour and a half into the deposition. (*Id.* at 14:12-15:25; 64:6-65:25; 79:19-24.) Once the documents arrived, Dr. Deukmedjian was unprepared and/or unwilling to discuss them. (*Id.* at 80-85.) Additionally, Dr. Deukmedjian unilaterally decided that the deposition would only last two hours. (*Id.* at 65:12-66:14; 71:15-18; 107:21-24.)

Moreover, Dr. Deukmedjian continuously mischaracterized the nature of the subpoena *duces tecum*. He chose to limit the questions in the subpoena to literal questions, rather than areas of inquiry, and refused to answer any question not specifically listed in the Court order. (Doc. No. 160, p. 6 ("Dr. Deukmedjian maintained this refusal despite Defense Counsel's attempts to explain that areas of inquiry are just that - areas of inquiry - and not specific questions.").); (*see also* Doc. No. 124-1, pp. 29:20-30:6.) The Court finds that these are the unusual and compelling circumstances allowing for the non-party discovery ordered by Magistrate Smith in this case.

**CONCLUSION**

For the reasons stated above, Magistrate Smith's orders are not clearly erroneous or contrary to law. Non-parties Deuk Spine and Dr. Deukmedjian have failed to show that their objection warrants a reversal of Magistrate Smith's discovery orders. Magistrate Smith, having fully managed the pre-trial aspect of this case and otherwise

being fully informed with the conduct of the parties and non-parties in the discovery process, is in the best position to determine the credibility of assertions of efforts to comply with the Court's orders. Therefore, Deuk Spine's and Dr. Deukmedjian's Rule 72(a) Objection to Magistrate Smith's Discovery Orders (Doc. No. 150) is **OVERRULED**. The Magistrate Judge's orders (Doc. Nos. 136 & 146) are affirmed and adopted by the undersigned in its entirety.

**DONE AND ORDERED** in Chambers in Ocala, Florida, on April 17, 2012.

ROY B. DALTON JR.
United States District Judge

Copies:

counsel of record